[No. A046748. First Dist., Div. Three. Dec. 28, 1990.]

DONALD E. LOEHR, Plaintiff and Appellant, v.
GREAT REPUBLIC INSURANCE COMPANY, Defendant and
Respondent.

**COUNSEL**

Fowler & Ball and Robert A. Fowler for Plaintiff and Appellant.

Buxbaum & Chakmak, John Chakmak, Charles L. Zetterberg and Betty O. Yamashiro for Defendant and Respondent.

**OPINION**

**MERRILL, J.**—Donald E. Loehr appeals from a judgment entered following a jury trial on his complaint against respondent Great Republic

Insurance Company (Great Republic) alleging breach of contract and bad faith failure to pay claims arising under an insurance contract issued by respondent to appellant. Because the trial court erred as a matter of law in giving certain instructions resulting in prejudice to appellant, we reverse the judgment.

I

Appellant Donald E. Loehr and his wife, Phyllis Loehr, together operated an automobile service station in Ukiah. Mrs. Loehr managed the bookkeeping side of the business, while appellant performed the mechanical and repair work on customers' automobiles. For their insurance needs, the Loehrs had turned since 1977 to Jerrold S. Doyle, an independent insurance agent licensed to sell insurance in the State of California. Doyle was authorized to sell insurance on behalf of a number of insurance companies.

In July 1984, Great Republic had filed with the Department of Insurance its official notification pursuant to the Insurance Code of Great Republic's appointment of Doyle "to act as its agent within the State of California." In August 1984, Doyle signed an "Agent Appointment Agreement" with Great Republic. Under this written agreement, Great Republic expressly appointed Doyle as its agent "to solicit and service group insurance policies and plans marketed by" Great Republic in California, to collect premiums and policy fees for Great Republic, to "[p]rovide prompt service to insureds participating in the insurance policies for which the Agent [Doyle] is being paid commissions . . . ," and "[o]therwise [to] aid in [Great Republic's] administration of the policies and plans hereunder."

The health insurance policy which Doyle recommended to appellant and Mrs. Loehr was a policy issued by Great Republic called "the Solution." The booklet issued by Great Republic describing this health plan contained the statement that "if you have any questions whatsoever, please contact your agent as he is a trained professional in this field and he wants to be as helpful to you as possible. [¶] . . . We believe that . . . you will find our agents and company personnel expert at their jobs and that they will be responsive to each of your individual needs."

On February 4, 1986, Doyle filled out an application for the Great Republic health policy, using an application form provided by Great Republic. The application requested an effective date of February 1, 1986. According to instructions Doyle received from Great Republic, applications had to be received by Great Republic "no later than seven calendar days after the requested effective date." Doyle expected that the policy would receive an

effective date of February 1, 1986, in accordance with Great Republic's published guidelines, and he so informed the Loehrs.

Great Republic received the application on February 6, 1986. The application was processed by Great Republic employee Chi Nguyn. On February 21, 1986, Nguyn made a telephone call to Doyle to inform him that because the application had been signed and dated on February 4, 1986, the policy could not be made effective on February 1. Nguyn told Doyle that the policy could be given an effective date of either February 15, with the payment of an additional half-month premium, or March 1. Doyle told Nguyn to make the policy effective March 1, 1986. Nguyn sent appellant a letter stating that Great Republic had been unable to honor the requested effective date of February 1 because the application had been signed after that date, and confirming that the policy would be effective from March 1. The policy was thereafter issued with that effective date.

Included in the health policy that Great Republic issued to appellant and Mrs. Loehr was a provision excluding coverage for charges arising from conditions requiring heart bypass surgery, unless such charges were incurred after the end of the first six months of policy coverage.

On August 19, 1986, appellant began experiencing physical problems. Mrs. Loehr took him to the hospital in Ukiah the next day after he suffered an apparent heart attack. Dr. Randall Bream, a cardiologist, consulted with appellant and his wife while they were at the hospital. Dr. Bream explained to appellant the various medical and surgical options available to treat appellant's heart condition. Appellant was released on August 22, 1986, but arrangements were made for him to be admitted to St. Helena Hospital on August 26, 1986, for an angiogram.[1]

Before appellant entered St. Helena Hospital, Mrs. Loehr called Doyle to ask him if there would be any problems with their health insurance covering appellant's sudden heart problems and possible surgery. Doyle told her that he would call Great Republic "to see if there was any pre-authorization for surgery or any second opinion needed." Doyle testified that he did this because it was his "duty . . . to service [his] client," and it was a "normal thing nowadays in health insurance to require second surgical opinions and pre-authorization for surgery. So I wanted to touch all bases and be sure that we knew where we were." Doyle called Great Republic that day and spoke to someone there named Alex. According to Doyle's testimony, he identified himself, gave Alex appellant's name and policy number, and told

---

[1] An angiogram is a medical procedure whereby the chambers of the heart and the coronary arteries may be studied for possible obstructions, blockages or narrowing.

him what the problem was. Alex in turn told Doyle that there was no preauthorization or second opinion required, and that "there would be coverage" for possible heart surgery. Doyle made a written notation of this telephone call and passed this information on to appellant's wife.

On the basis of the results of the angiogram, Dr. Bream recommended bypass surgery. It was not an emergency situation, and surgery could have been postponed until the first or second week of September without risk to appellant's health. Nevertheless, appellant was scheduled for bypass surgery on August 28, 1986, because there was no reason known to appellant or his wife for postponing it. It was expected that he would be in that hospital for 10 to 11 days. Based on what she had been told by Doyle, Mrs. Loehr believed that the maximum that appellant's heart surgery would cost them would be $1,100, based on a $100 deductible and 20 percent of the first $5,000 of cost.

Surgery was performed on appellant on August 28, 1986. Appellant was released from St. Helena Hospital on September 4, 1986. The total medical charges were $35,323.80. Appellant received a letter from respondent dated October 17, 1986, stating that Great Republic was "in the process of paying certain claims," that payment of such claims "shall not act as an admission of responsibility by Great Republic . . . for any purpose . . . ," and that Great Republic wanted to pay the claims "quickly and before completing investigation of the claims . . . ," but "with full reservation of all of Great Republic['s] . . . rights . . . ."

Subsequently, in the first week of November 1986, appellant received a letter from respondent dated October 29, 1986, stating that the charges incurred in connection with the coronary bypass surgery were excluded under the terms of the insurance policy, because they had been incurred within six months of the initial coverage date of March 1, 1986. The six-month period had expired on September 1, 1986, and the surgery had taken place four days prior to that date. The amount of appellant's claim paid by Great Republic came to $6,518.62; the amount unpaid was $28,805.18.

Appellant filed suit against Great Republic, seeking payment of the full amount of the claim as well as punitive damages for alleged bad faith. At trial, appellant offered in evidence the August 1984 written agent appointment agreement appointing Doyle an agent of Great Republic, and the form filed with the Department of Insurance listing Doyle as an agent of Great Republic. Appellant called Donald Dadigan, a vice-president of Great Republic, as an adverse witness. Under cross-examination by appellant's attorney, Dadigan testified that he assumed that Doyle was an agent of Great Republic, based on the facts that Doyle had signed the agent appointment

agreement, and that he sold Great Republic insurance products pursuant to that agreement.

At the conclusion of trial, appellant submitted points and authorities in support of his position that as a matter of law and under Insurance Code sections 31 and 35, Doyle was an insurance agent licensed to transact insurance business on behalf of Great Republic. Appellant requested jury instructions to this effect. These were denied. Instead, the trial court gave an instruction stating that each party claimed that Doyle was the agent for the other party with respect to the effective date of coverage; that if the jury found that Doyle was the agent of appellant, then any act or omission of Doyle was in law the act or omission of appellant; and conversely, that if the jury found that Doyle was the agent of Great Republic, any act or omission of Doyle was imputed to Great Republic.[2]

The jury returned a verdict in favor of Great Republic, and this appeal followed the trial court's denial of appellant's motion for a new trial.

## II

■ Appellant contends that the trial court committed error in not instructing the jury that Doyle was an agent of Great Republic. We agree.

The Insurance Code defines an insurance agent as "a person authorized, by and on behalf of an insurer, to transact insurance." (Ins. Code, § 31.) The word "transact," as applied to insurance, is defined to include "any of the following: [¶] (a) Solicitation. [¶] (b) Negotiations preliminary to execution. [¶] (c) Execution of a contract of insurance. [¶] (d) Transaction of matters subsequent to execution of the contract and arising out of it." (Ins. Code, § 35.) An insurance agent is distinguished from an insurance broker, which is defined as "a person who, for compensation and on behalf of another person, transacts insurance other than life with, but not on behalf of, an insurer." (Ins. Code, § 33.)

An individual cannot act as an insurance agent in California without a valid license issued by the commissioner of insurance. (Ins. Code, § 1631.)

---

[2] The jury instruction as given by the trial court was as follows: "Plaintiff Donald Loehr and defendant Great Republic Insurance Company each claim that Gerald [sic] Doyle was the agent for the other party with respect to the effective date of plaintiff Donald Loehr's insurance coverage with the defendant Great Republic. [¶] If you find that Gerald [sic] Doyle was the agent of the plaintiff Donald Loehr at such time, then any act or omission of Gerald [sic] Doyle at the time was in law the act or omission of plaintiff. [¶] If, on the other hand, you find that Gerald [sic] Doyle was the agent of the defendant Great Republic Insurance Company at such time, then any act or omission of Gerald [sic] Doyle at that time was in law the act or omission of the defendant."

In addition to possessing a license, an insurance agent must be authorized by an insurance carrier to transact insurance business on the carrier's behalf. This authorization must be evidenced by a notice of agency appointment on file with the Department of Insurance. (Ins. Code, § 1704, subd. (a).) An agent is generally not limited in the number of agency appointments that he or she may have; thus, an agent may solicit business on behalf of a variety of different insurance carriers, and still technically be an agent of each of those carriers. (Ins. Code, § 1704, subd. (a).)

The evidence is uncontradicted that Doyle had an agency appointment on file with the Department of Insurance listing him as an agent of respondent Great Republic, and that he and Great Republic had executed a written agency appointment agreement expressly authorizing him to transact insurance business on behalf of Great Republic as its agent. In addition, the record contains the testimony of Dadigan, respondent's vice-president, confirming that Doyle was an agent of Great Republic based on Doyle's execution of the agency appointment agreement and his transaction of insurance business on behalf of Great Republic pursuant to that agreement. Despite this evidence, the trial court instructed the jury in a way that required it to decide whether Doyle was an agent of appellant or of Great Republic, and to find that if Doyle was appellant's agent, then "any act or omission of . . . Doyle at the time was in law the act or omission of [appellant]."

In our view, the trial court committed prejudicial error in so instructing the jury. The instruction given explicitly stated that Doyle might not actually have been Great Republic's insurance agent at the time he arranged for appellant's insurance policy. Yet the documents filed by Great Republic with the Department of Insurance conclusively evidence the fact of Doyle's agency with Great Republic. The only "evidence" to the contrary cited by respondent consists of the fact that Doyle was licensed to sell the insurance products of a variety of carriers, and the statements of Mrs. Loehr under cross-examination that she and appellant considered Doyle to be their agent. Neither of these facts supports the instruction given.

In the first place, it is obvious from our reading of the trial transcript that Mrs. Loehr's colloquial use of the word "agent" in response to questioning by respondent's trial attorney cannot in any sense be interpreted as a legal admission that Doyle was actually the agent of her and her husband as a matter of law. It is clear from the record that the relationship of appellant and Mrs. Loehr with Doyle was no different from that of any other purchaser of insurance with the agent of a carrier. It is not uncommon for a person to refer to an agent of an insurance company with whom he or she is doing business as "my agent."

Secondly, as discussed, the Insurance Code specifically provides that an individual can be an agent of several different insurance carriers at the same time. (Ins. Code, § 1704, subd. (a).) The fact that Doyle was an "independent" insurance agent so licensed to transact insurance business for several different carriers did not insulate Great Republic from responsibility for Doyle's actions as its agent, or make appellant liable therefor.

The case of *Eddy* v. *Sharp* (1988) 199 Cal.App.3d 858 [245 Cal.Rptr. 211], on which respondent relies for its contention that Doyle was appellant's agent rather than Great Republic's, is clearly distinguishable from the instant case. The court in *Eddy* was concerned with whether the defendant insurance agent or broker in question owed any duties to the consumer plaintiff. The case did not address the issue of whether the defendant's acts or omissions were binding on the carrier, or even whether the defendant in fact was an agent of the carriers he dealt with, as opposed to being an independent insurance broker. (*Id.*, at pp. 864-867.)

The evidence in the record establishes that Doyle was an agent of Great Republic. As such, his acts and omissions as agent were binding on respondent. (*Marsh & McLennan of Cal., Inc.* v. *City of Los Angeles* (1976) 62 Cal.App.3d 108, 117 [132 Cal.Rptr. 796].) Of course, Doyle may perform acts outside his agency or in excess of his authority for which Great Republic would have no responsibility or liability, and there may be factual questions as to representations he made to the insured. In the instant case, however, when the instructions are taken as a whole the jurors were led to believe that if an agency relationship existed between appellant and Doyle, they were barred from finding that Doyle was the agent of Great Republic. This error was necessarily prejudicial under the circumstances of this case, which turned on whether or not Great Republic was bound by Doyle's representations that the insurance policy provided coverage if appellant went ahead with coronary bypass surgery in late August 1986. It is true, of course, that Doyle could have been an agent for both appellant and Great Republic. However, the way in which the instructions were drawn did not permit the jury to find that Doyle was an agent of Great Republic if it found that he was an agent of appellant.

In view of our finding of instructional error, it is unnecessary for us to rule on other issues raised by appellant.

The judgment is reversed and remanded for a new trial. Appellant is awarded costs on appeal.

White, P. J., and Strankman, J., concurred.

A petition for a rehearing was denied January 24, 1991, and respondent's petition for review by the Supreme Court was denied March 14, 1991. Panelli, J., was of the opinion that the petition should be granted.